# 21-0631-cv(L),
# 21-0633-cv(CON), 22-1587-cv(CON)

## United States Court of Appeals
### *for the*
## Second Circuit

1199 SEIU UNITED HEALTHCARE WORKERS EAST,

*Petitioner-Appellee,*

– v. –

CHINESE-AMERICAN PLANNING COUNCIL HOME ATTENDANT
PROGRAM, UNITED JEWISH COUNCIL OF THE EAST SIDE HOME
ATTENDANT SERVICE CORP.,

*Respondents-Appellees,*

– v. –

GAIL YAN, ALVARO RAMIREZ GUZMAN, ELIDA AUGUSTINA MEJIA
HERRERA, LETICIA PANAMA RIVAS, EUGENIA BARAHONA
ALVARADO, RAFAELA CRUCETA, VIRTUDES DURAN, WAI KAM LOU,
YUE MING WU and CUI YING MAI,

*Appellants,*

*(For Continuation of Caption See Inside Cover)*
―――――――――――――――

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR RESPONDENTS-APPELLEES

KENNETH KIRSCHNER
DAVID J. BARON
HOGAN LOVELLS US LLP
*Attorneys for Respondents-Appellees*
390 Madison Avenue
New York, New York 10017
(212) 918-3000

MEI KUM CHU, SAU KING CHUNG, QUN XIANG LING, EPIFANIA
HICHEZ, CARMEN CARRASCO, SEFERINA ACOSTA, MARIA DIAZ,

*Intervenors-Appellants,*

PSC COMMUNITY SERVICES, NEW PARTNERS, INC., DBA Partners in
Care, STELLA ORTON HOME CARE AGENCY, INC., RICHMOND HOME
NEEDS, SUNNYSIDE HOME CARE PROJECT, SUNNYSIDE CITYWIDE
HOME CARE, FAMILY HOME CARE OF BROOKLYN AND QUEENS,
CARE AT HOME, THE FIRST CHINESE PRESBYTERIAN COMMUNITY
AFFAIRS HOME ATTENDANT CORP., AZOR HOME CARE, BUSHWICK
STUYVESANT HEIGHTS HOME ATTENDANT, INC., CABS HOMECARE,
RIVERSPRING LICENSED HOMECARE SERVICES AGENCY, INC, ST.
NICHOLAS HUMAN SUPPORTS CORP., WARTBURG, ALLIANCE FOR
HEALTH, INC., REGION CARE, INC., SPECIAL TOUCH HOME CARE
SERVICE, INC., RAIN, INC., PRESTIGE HOME CARE, INC., PRESTIGE
HOME ATTENDANT, INC., DBA All Season Home Attendant, PERSONAL
TOUCH HOME CARE OF N.Y., INC., PRIORITY HOME SERVICES,
PREMIER HOME HEALTH CARE, INC., BRONX JEWISH COMMUNITY
COUNCIL HOME ATTENDANT SERVICES, CIDNY INDEPENDENT
LIVING SERVICES, HOME CARE SERVICES FOR INDEPENDENT
LIVING, NEW YORK FOUNDATION FOR SENIOR CITIZENS HOME
ATTENDANT SERVICES, INC., COOPERATIVE HOME CARE
ASSOCIATES, RISEBORO HOME CARE, INC., FEGS HOME ATTENDANT
SERVICES, HOME HEALTH MANAGEMENT SERVICES, INC., SCHOOL
SETTLEMENT HOME ATTENDANT CORP., ROCKAWAY HOME
ATTENDANT, BRONXWOOD HOME FOR THE AGED, INC.,
ACCENTCARE OF NY, INC., ISABELLA VISITING CARE, INC., SOCIAL
CONCERN COMMUNITY DEVELOPMENT CORP., ABC HEALTH
SERVICES REGISTRY, ALLIANCE HOME SERVICES, INC.,
COLLECTIVELY IDENTIFIED BY THE ARBITRATOR AS
HOME HEALTH CARE AGENCIES,

*Respondents,*

RAMONA DE LA CRUZ, DULCE HERRERA PALMA,

*Intervenors.*

## CORPORATE DISCLOSURE STATEMENT

Respondent-Appellee Chinese-American Planning Council Home Attendant Program, Inc. ("CPC"), a private, non-governmental party, is a wholly owned subsidiary of Chinese-American Planning Council, Inc., a not-for-profit organization.  No publicly held corporation owns 10% or more of CPC's stock.

# TABLE OF CONTENTS

                                                                     Page

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES .......................................................................iv

INTRODUCTION ................................................................................ 1

COUNTERSTATEMENT OF ISSUES PRESENTED ............................................ 5

COUNTERSTATEMENT OF THE CASE ...................................................... 6

    I.    The CBA and 2015 MOA ................................................. 6

    II.    The *Chu* Matter Against CPC ........................................... 8

    III.    The Union's January 2019 Grievance, the Arbitration Awards and the Instant Proceedings ................................................. 11

COUNTERSTATEMENT OF THE STANDARD OF REVIEW ........................ 15

SUMMARY OF ARGUMENT ............................................................. 16

ARGUMENT ................................................................................20

    I.    The Court Should Affirm the District Court's Denial of CPC Intervenors' Motion to Intervene ...................................... 20

        A. CPC Intervenors Lack Standing to Intervene .............................. 20

        B. Proposed Intervenors are Not Entitled to Intervene as of Right ... 25

        C. Permissive Intervention is Not Warranted .................................. 30

        D. Federal Rule of Civil Procedure 71 Does Not Cover Standing .... 31

II.    The Court Should Grant the Petition to Confirm the Second Award
       and Deny the Motion to Partially Vacate ............................................ 32

       A. The District Court Previously Upheld the Arbitrator's Rulings
          on Arbitrability .................................................................................. 33

       B. The Second Award Construes and Applies the CBA, Sets Forth a
          Clear Justification and Rationale for the Arbitrator's Conclusions
          and Remedy, and therefore, Must be Confirmed .......................... 38

       C. Movants Lack Standing to Move to Vacate the Second Award ... 39

CONCLUSION .................................................................................................... 41

CERTIFICATE OF COMPLIANCE .................................................................... 42

CERTIFICATE OF SERVICE ............................................................................. 43

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs.*,
　520 F. Supp. 3d 588 (S.D.N.Y. 2021)........................................................... *passim*

*1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs.*,
　597 F. Supp. 3d 557 (S.D.N.Y. 2022).................................................... 40

*1199SEIU United HealthCare Workers E. v. PSC Cmty. Servs.*,
　No. 20-cv-3611, 2022 U.S. Dist. LEXIS 185917
　(S.D.N.Y. Oct. 11, 2022) ............................................................. 12, 37

*A&A Maint. Enter., Inc. v. Ramnarain*,
　982 F.3d 864 (2d Cir. 2020)........................................................ 16, 35

*ABM Indus. Grps., L.L.C. v. Int'l Union of Operating Eng'rs, Loc. 30*,
　968 F.3d 158 (2d Cir. 2020)........................................................ 39

*Agarunova v. Stella Orton Home Care Agency, Inc.*,
　794 F. App'x 138 (2d Cir. 2020) ........................................... 37

*Ass'n of Contracting Plumbers of N.Y., Inc. v. Local Union No. 2 United Ass'n
　of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. &
　Canada*,
　841 F.2d 461 (2d Cir. 1988)........................................................ 21

*Bono v. United States*,
　113 F.2d 724 (2d Cir. 1940)....................................................... 6

*Brennan v. N.Y.C. Bd. of Educ.*,
　260 F.3d 123 (2d Cir. 2001)................................................ 4, 18, 26

*Bridgeport Guardians, Inc. v. Delmonte*,
　602 F.3d 469 (2d Cir. 2010)...................................................... 26

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
　250 F.3d 171 (2d Cir. 2001)................................................ 4, 16, 27

iv

*Calderon v. Wambua*,
   2012 WL 1075840 (S.D.N.Y. Mar. 28, 2012) ..................................................... 31

*Catanzano ex. rel Catanzano v. Wing*,
   103 F.3d 223 (2d Cir. 1996)................................................................................. 15

*Chan v. Chinese-Am. Planning Council Home Attendant Program, Inc.*,
   180 F. Supp. 3d 236 (S.D.N.Y. 2016)............................................................. 8, 36

*Chan v. Chinese-American Planning Council Home Attendant Program, Inc.*,
   No. 15-cv-09605 (LGS) (S.D.N.Y. Sept. 06, 2022) ............................................ 6

*Chu v. Chinese-Am. Planning Council Home Attendant Program, Inc.*,
   194 F. Supp. 3d 221 (S.D.N.Y. 2016)................................................................. 24

*Chu v. Chinese-Am. Plan. Council Home Attendant Program, Inc.*,
   No. 1:21-cv-02115-AT (S.D.N.Y. 2021) .............................................................. 8

*Chu v. Chinese-Am. Plan. Council Home Attendant Program, Inc.*,
   No. 651947/2016 (N.Y. Sup. Ct. April 1, 2017)................................................... 7

*Chu v. Chinese-Am. Plan. Council Home Attendant Program, Inc.*,
   No. 651947/2016 (N.Y. Sup. Ct. April 1, 2017) .................................................. 7

*Chu v. Chinese-Am. Plan. Council Home Attendant Program, Inc.*,
   No. 651947/2016 (N.Y. Sup. Ct. April 12, 2016).................................................. 7

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .................................................................................... *passim*

*Commc'ns Workers of Am., AFL-CIO v. AT&T Inc.*,
   6 F.4th 1344, 1348 (D.C. Cir. 2021)………………………………………… 33

*Contec Corp. v. Remote Sol. Co.*,
   398 F.3d 205 (2d Cir. 2005)........................................................................... 33, 35

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)............................................................... 4, 19, 25, 27

*DSI Assocs. LLC v. United States*,
    496 F.3d 175 (2d Cir. 2007).................................................. 15

*Duraku v. Tishman Speyer Props., Inc.*,
    714 F. Supp. 2d 470 (S.D.N.Y. 2010)................................. 36

*Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC*,
    289 F. Supp. 3d 582 (S.D.N.Y. 2018)................................ 23, 26, 27, 30

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) ........................................................... 34

*Fleischer v. Barnard Coll.*,
    2021 WL 5365581 (2d Cir. Nov. 18, 2021)........................ 22

*Floyd v. City of New York*,
    770 F.3d 1051 (2d Cir. 2014).............................................. 25

*Germosen v. ABM Indus. Corp.*,
    2014 WL 4211347 (S.D.N.Y. Aug. 26, 2014) .................... 36

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ......................................................... 16

*Hichez v. United Jewish Council of the E. Side*,
    179 A.D.3d 576 (N.Y. 1st Dep't 2020).............................. 37

*Hichez v. United Jewish Council of the E. Side*,
    2020 WL 2747784 (N.Y. Sup. Ct. N.Y. Cnty. May 27, 2020) ........................... 40

*In re Holocaust Victim Assets Litig.*,
    225 F.3d 191 (2d Cir. 2000)........................................... 25, 27

*In re Manhattan Inv. Fund Ltd.*,
    343 B.R. .............................................................................. 21

*In Re Payment Card Interchange Fee & Merch Discount Antitrust Lit.*,
    827 F.3d 223 (2d Cir. 2017).......................................... 28, 29

vi

*Invs. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    550 B.R. 241 (S.D.N.Y. 2016) .............................................................. 27

*Irvin v. Harris*,
    944 F.3d 63 (2d Cir. 2019) .................................................................... 40

*Katir v. Columbia Univ.*,
    15 F.3d 23 (2d Cir. 1994) ............................................................. *passim*

*Lasky v. Quinlan*,
    558 F.2d 1133 (2d Cir. 1977) ............................................................... 31

*Loc. 794, Television Broad. Studio Emps. Union, I.A.T.S.E. v. Metro. Opera Ass'n, Inc.*,
    2022 WL 992830 (S.D.N.Y. Mar. 31, 2022) ....................................... 39

*Major League Baseball Players Ass'n v. Garvey*,
    532 U.S. 504 (2001) .............................................................................. 39

*Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*,
    820 F.3d 527 (2d Cir. 2016) ........................................................... 34, 38

*Nat. Res. Def. Council, Inc. v. N.Y. State Dep't of Env't Conservation*,
    834 F.2d 60 (2d Cir. 1987) ............................................................. 28, 29

*Nicosia v. Amazon.com*,
    834 F.3d 220 (2d Cir. 2016) ................................................................ 34

*Pontier v. U.H.O Mgmt. Corp.*,
    No. 10-cv-8828, 2011 WL 1346801 (S.D.N.Y. Apr. 1, 2011) ............. 36

*Ransmeier v. Mariani*,
    486 F. App'x 890 (2d Cir. 2012) ......................................................... 20

*Republic Steel Corp. v. Maddox*,
    379 U.S. 650 (1965) .............................................................................. 28

*Rodriguez v. New York Foundation for Senior Citizens Home Attendants Servs. Inc.*,
    No. 15-cv-9817(VEC), 2016 WL 11707094 (S.D.N.Y. July 14, 2016) ............. 36

*Ryan v. Allen*,
  992 F. Supp. 152 (N.D.N.Y. 1998) ...................................................... 32

*Santore v. Cuomo*,
  2020 WL 9810016 (N.D.N.Y. Aug. 14, 2020) .................................... 31

*Smith v. Bayer Corp.*,
  564 U.S. 299 (2011) ........................................................................ 24

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ........................................................................ 23

*State Comm. of Indep. v. Berman*,
  2003 WL 22801908 (S.D.N.Y. Nov. 21, 2003) .................................. 30

*Town of Chester v. Laroe Ests., Inc.*,
  581 U.S. 433 (2017) ............................................................... 3, 22, 25

*U.S. Postal Serv. v. Am. Postal Workers Union*,
  564 F. Supp. 545 (S.D.N.Y. 1983) .................................................... 13

*Union Switch & Signal, Inc. v. St. Paul Fire & Marine Ins. Co.*,
  226 F.R.D. 485 (S.D.N.Y. 2005) ...................................................... 27

*United States v. City of New York*,
  198 F.3d 360 (2d Cir. 1999) ............................................................ 29

*United States v. Dist. Council of N.Y.C. & Vicinity of United Bhd.*
  *of Carpenters & Joiners of Am.*,
  2002 WL 31873460 (S.D.N.Y. Dec. 24, 2002) .................................. 31

*United States v. Pitney Bowes, Inc.*,
  25 F.3d 66 (2d Cir. 1994) ................................................................ 16

*Wash. Elec. Coop. Inc. v. Mass. Mun. Wholesale Elec. Co.*,
  922 F.2d 92 (2d Cir. 1990) .............................................................. 28

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) ........................................................................ 23

*Wong v. Doar*,
   571 F.3d 247 (2d. Cir. 2009) ................................................................... 32

**Statutes:**

U.S Constitution Art. III ......................................................................... 3, 22

29 U.S.C. §§ 141–197 ................................................................................ 1

**Rules:**

Federal Rule of Civil Procedure 24 .............................................. *passim*

Federal Rule of Civil Procedure 71 ......................................... 19, 31, 32

**INTRODUCTION**

Respondent-Appellee Chinese-American Planning Council Home Attendant Program, Inc. ("CPC") submits this brief for the purpose of opposing the appeal filed in this matter by three former CPC employees—Mei Kum Chu, Sau King Chung, and Qun Xiang Ling (collectively, "CPC Intervenors")—who challenge the District Court's denial of their second motion to intervene ("Motion to Intervene") in order to vacate an arbitral award to which they are not a party. By affirming the denial of intervention by CPC Intervenors, this Court need not address their arguments opposing confirmation or seeking to partially vacate the award. In any event, those motions should be denied as well.

This appeal arises from the District Court's confirmation of a second arbitral award under the Labor Management Relations Act ("LMRA"). *See* 29 U.S.C. §§ 141–197. CPC, along with several dozen other home care agencies, provide health care services to elderly and infirm residents of New York City. Their employees are represented by a union, 1199SEIU United Healthcare Workers East ("Union"). Pursuant to collective bargaining agreements between the Union and each of the home care agencies, the Union and the agencies have been arbitrating claims that the Union filed on behalf of more than 100,000 current and former employees it represents. On June 24, 2023, the Arbitrator issued a second Award resolving the claims at issue ("Second Award"). Following the Arbitrator's decision, the Union

filed a petition in the District Court to confirm the Arbitrator's Second Award. A small number of CPC former employees, along with a few others from different agencies, sought to intervene in the District Court proceedings and oppose confirmation of the Arbitrator's Second Award. The District Court correctly denied the CPC Intervenors' motion to intervene and confirmed the Second Award.

On appeal, CPC Intervenors contend that the District Court erred in denying their motion to intervene. Their arguments miss the mark. The District Court did not abuse its discretion in concluding that CPC Intervenors lacked standing and, in any event, did not satisfy the requirements for intervention.

*First*, the District Court correctly concluded that CPC Intervenors cannot intervene because they lack statutory standing to oppose confirmation of the Arbitrator's Second Award under the Supreme Court's and this Court's longstanding precedents interpreting the LMRA. Those precedents are clear: "If there is no claim that the union breached its duty of fair representation, an individual employee represented by a union" in a labor arbitration "generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties." *Katir v. Columbia Univ.*, 15 F.3d 23, 24-25 (2d Cir. 1994) (per curiam). Here, the Union and the home care agency employers were the only parties to the arbitration. And CPC Intervenors have acknowledged that the Union did not breach its duty of fair representation. CPC Intervenors try to maneuver around this

2

by erroneously asserting that the Union had no such duty – but it does. CPC Intervenors thus lack statutory standing under this Court's precedents, and the District Court correctly denied their motion to intervene.

CPC Intervenors also lack standing because they fail to satisfy the minimum requirements of Article III of the U.S Constitution. To establish Article III standing, litigants must demonstrate that their alleged injury is "imminent" or "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis and internal quotation marks omitted). CPC Intervenors have not met that burden. They assert only that confirmation of the Second Award may "*potentially* impact[] the rights of the CPC Intervenor-class representatives from moving to certify classes" in their other pending litigation. CPC Intervenors Br. 40 (emphasis added). But the Supreme Court has held that such speculative "allegations of *possible* future injury are not sufficient" to show "imminent" harm. *Clapper*, 568 U.S. at 409 (internal quotation marks and alteration omitted). CPC Intervenors therefore lack Article III standing and cannot intervene as of right. *See Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439-441 (2017). As a result, this Court need not reach the question whether CPC Intervenors satisfy the requirements for intervention as of right under Federal Rule of Civil Procedure 24(a).

*Second*, even if this Court reaches that question, the District Court did not abuse its discretion in concluding that CPC Intervenors failed to satisfy three of the

3

requirements for intervention as of right under Rule 24(a). For one thing, CPC Intervenors cannot establish a cognizable "interest" in the petition for confirmation of the Second Award because their claimed interests—believing themselves entitled to a greater monetary award and preserving the strength of their efforts to move for class certification—are too "remote" and "contingent" under this Court's precedents. *See Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001) (internal quotation marks omitted). For another, they have not shown that their interests "may be impaired by the disposition" of the confirmation petition because any such impairment turns on speculation regarding the weight other courts might give to the District Court's confirmation decision. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001). Finally, they cannot meet their burden to show that the Union failed to adequately represent their interests because the Union and CPC Intervenors share the same "ultimate objective"—namely, prevailing on their claims against the home care agency employers. *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001). The failure to meet any one of these requirements would be sufficient to deny a motion to intervene—and here, CPC Intervenors have failed to meet all three.

There are several independent hurdles CPC Intervenors must clear to be entitled to intervention as of right. They must show that they have standing under this Court's precedents applying the LMRA; they must show that they have Article

4

III standing; and they must show that the District Court abused its discretion in finding that CPC Intervenors failed to meet each of three separate requirements for intervention under Rule 24. CPC Intervenors must run the table on all to win on appeal. They can succeed on none. Accordingly, this Court should affirm the District Court's denial of CPC Intervenors' motion to intervene.

As to the CPC Intervenors' other motions on appeal, if the District Court's denial of the motion to intervene is affirmed then the other motions are moot since the CPC plaintiffs will not be permitted to intervene and inject their arguments into the case. In any case, CPC addresses the other motions on appeal herein as well to show that the Second Award should be confirmed and no portion of it should be vacated.

## COUNTERSTATEMENT OF ISSUES PRESENTED

1.  Did the District Court abuse its discretion in concluding that CPC Intervenors, as non-parties to the underlying arbitration, lacked standing to intervene and object to confirmation of the Second Award? This question should be answered in the negative.

2.  Did the District Court abuse its discretion in concluding that CPC Intervenors were not entitled to intervene as of right or by permission? This question should be answered in the negative.

3.     Did the District Court correctly confirm the Second Award and deny partial vacatur of same? This question should be answered in the affirmative.

## COUNTERSTATEMENT OF THE CASE

Given the voluminous briefing to date, CPC assumes the Court's familiarity with the relevant facts and procedural history of this case.  However, for ease of reference, CPC describes herein the factual and procedural history that is relevant to the issues on appeal.[1]

### I.     The CBA and 2015 MOA.

CPC is a not-for-profit provider of home health care services to elderly, infirm and disabled residents of New York City.  A642, ¶ 2.  Since on or before 2012, CPC has had a collective bargaining agreement ("CBA") with the petitioner-appellee in this case, the Union.  A79.  The CBA sets forth the multi-step dispute resolution procedure that employees must pursue to raise complaints against the employers, which culminates in "final and binding arbitration under the Labor Arbitration Rules of the American Arbitration Association ['AAA']."  A675..  Rule 3(a) of the AAA Rules is a delegation of procedural issues to the Arbitrator and provides that "[t]he

---

[1] This Court should disregard amici's brief because it does not address the issues raised in this appeal, namely that CPC Intervenors lacked standing to intervene, CPC Intervenors were not entitled to intervene as of right, and that the Second Award was proper.  Furthermore, CPC objects to the improper use of non-record allegations about CPC employees by amici in their brief.  *See Bono v. United States*, 113 F.2d 724, 725 (2d Cir. 1940) (stating it is the record alone which controls as to the facts).

arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." A595 (AAA Labor Arbitration Rule 3(a)).

Effective December 1, 2015, CPC entered into a memorandum of agreement—the "2015 MOA"—with the Union. A195-207. Among other things, the 2015 MOA amended the CBA by adding a new alternative dispute resolution provision by which the parties agreed that "all claims brought by either the Union or Employees, asserting violations of or arising under the Fair Labor Standards Act ('FLSA'), New York Home Care Worker Wage Parity Law, or New York Labor Law (collectively, the 'Covered Statutes'), in any manner, shall be subject exclusively, to the grievance and arbitration procedures described in this Article." A204. Included among those procedures is a "mandatory mediation" that employees and/or the Union must exhaust as to any covered claims they might have against a covered employer. *Id.* If mediation is not successful, the grieving party must submit its claim(s) "to final and binding arbitration" before Martin F. Scheinman, Esq. ("Arbitrator"). *Id.* Both CPC and the Union are contractually forbidden from contesting confirmation of an arbitration award issued under this provision. *Id.* The 2015 MOA modified and amended the CBA so there was no need for the parties to incorporate by reference the provision dealing with the AAA Rules regarding final and binding arbitration under the new alternative dispute resolution mechanism.

7

## II. The *Chu* Matter Against CPC.

In March 2015, before the 2015 MOA was effective, three then-current CPC employees who are *not* among the CPC Intervenors filed a lawsuit against CPC in the New York Supreme Court, alleging claims under the Covered Statutes. *Chan v. Chinese-Am. Planning Council Home Attendant Program, Inc.*, 180 F. Supp. 3d 236, 239 (S.D.N.Y. 2016). Counsel for the *Chan* plaintiffs, Fisher Taubenfeld, also is counsel for the CPC Intervenors in this case. The *Chan* plaintiffs purported to represent all current and former employees of CPC during the "period from six years preceding the filing of the Complaint . . . through the present," regardless of when they were employed by CPC. Appellants J.A., ECF No. 80, A362-363 ¶ 13. The *Chan* putative class includes the *Chu* Intervenors, all of whom were CPC employees during the *Chan* putative class period. The *Chan* matter was compelled to arbitration before the Arbitrator under the 2015 MOA, and on September 6, 2022, the *Chan* case was dismissed with prejudice on the ground that the claims had been properly resolved by the Arbitrator. *Chan v. Chinese-American Planning Council Home Attendant Program, Inc.*, No. 15-cv-09605 (LGS) (S.D.N.Y. Sept. 06, 2022).

On or about April 12, 2016, while *Chan* was still pending, Fisher Taubenfeld and TakeRoot Justice (then called Urban Justice Center) filed a second lawsuit against CPC in state court, on behalf of the three CPC Intervenors (the "*Chu* matter"). *Chu v. Chinese-Am. Plan. Council Home Attendant Program, Inc*., No.

651947/2016 (N.Y. Sup. Ct. April 12, 2016), NYSCEF No. 1. The *Chu* complaint alleged claims under the Covered Statutes and purported to represent a putative class that substantially overlapped with the *Chan* putative class. *Chu v. Chinese-Am. Plan. Council Home Attendant Program, Inc*., No. 651947/2016 (N.Y. Sup. Ct. April 1, 2017).

The CPC Intervenors attempted in the *Chu* matter to avoid arbitration under the 2015 MOA based on the fact that they left CPC before its effective date. *Id.* ¶¶ 24–26. However, the CPC Intervenors purported to represent a class in *Chu* that was actually composed mostly of employees who were employed by CPC beyond the effective date of the 2015 MOA. *Id.* ¶ 16. Accordingly, CPC moved to dismiss the *Chu* matter or stay it pending resolution of a similar matter brought by Fisher Taubenfeld and TakeRoot Justice on behalf of an overlapping putative class in *Chan*, which had been compelled to arbitration, and which included all three CPC Intervenors. A642 ¶ 5.

Thus, on April 17, 2017, New York Supreme Court Justice Carol Edmead granted CPC's motion to stay the *Chu* matter pending resolution of *Chan*. *Chu v. Chinese-Am. Plan. Council Home Attendant Program, Inc*., No. 651947/2016 (N.Y. Sup. Ct. April 1, 2017). The *Chu* matter remained stayed until March 12, 2019, when, following a conference with the Court, Justice Edmead dismissed the case without prejudice. A700. In early 2020, the CPC Intervenors attempted to enjoin

the arbitration proceeding and restore the *Chu* matter to the active docket.  A643 ¶

8.  They lost their motion to prevent the arbitration from going forward with respect

to pre-2015 MOA employees, but moved to reconsider.  *Id.*  ¶¶ 8–9 & A702.  On or

about February 9, 2021, Justice Edmead granted the motion to reconsider and

allowed CPC Intervenors to amend the *Chu* complaint to limit the putative class only

to CPC employees who left CPC's employ prior to the execution of the 2015 MOA.

A643 ¶ 10; Decision & Order on Mot., *Chu*, No. 651947/2016, NYSCEF No. 112.

Very shortly thereafter, CPC Intervenors filed an amended complaint.  *Id.*; Am.

Compl., *Chu*, No. 651947/2016, NYSCEF No. 116.  In response, CPC removed the

case to federal court.  A643 ¶ 10); *see also Chu v. Chinese-Am. Plan. Council Home

Attendant Program, Inc.*, No. 1:21-cv-02115-AT (S.D.N.Y. 2021).  The CPC

Intervenors then moved to remand.  A643  ¶ 11); Mot. to Remand to State Court,

*Chu*, No. 21-cv-01225-AT (S.D.N.Y. Mar. 18, 2021), ECF No. 7.  The district court

stayed proceedings pending resolution of the appeal to this Court of the denial of a

motion to remand a sister proceeding to this case involving First Chinese

Presbyterian Community Affairs Home Attendant Corporation.  A643 ¶ 11; *see also*

Order, *Chu*, No. 21-cv-01225-AT (S.D.N.Y. Dec. 3, 2021), ECF No. 22.  The

remand motion remains pending this consolidated appeal.  *See* Order, *Guzman v.

The First Chinese Presbyterian*, No. 21-1391-cv (2d Cir. Sept. 1, 2021).

Importantly, no class has been certified in *Chu*.[2]  A643 ¶ 12.

### III. The Union's January 2019 Grievance, the Arbitration Awards and the Instant Proceedings.

On January 2, 2019, the Union filed a grievance that it described as "a class action grievance on behalf of all of [the Union's] home care bargaining unit members . . . concerning claims that employees were not properly paid on 24-hour cases and with respect to any other outstanding wage and hour claims arising under the Covered Statutes" ("Grievance").  A643  ¶ 13.  The Grievance names some 50 or so respondents (all of the Respondents in this action) and, according to the Union, the Grievance covers some 100,000 bargaining unit members who are or were employed by those agencies.  *Id.*  When the Grievance was filed, counsel for CPC promptly sent it to counsel for CPC Intervenors, who responded that they had already received it.  A644 ¶ 14 & A704-705.  CPC Intervenors did not object to the Grievance, claim any harm because of the Grievance or ask any court or the Arbitrator for relief at that time.  *Id.*

After the Union filed its Grievance, the Arbitrator commenced the mediation process that is a contractually-mandated precursor to binding arbitration.  A644 ¶ 15.  The CPC Intervenors, through the same counsel that represents them in this

---

[2] In fact, no class *can* be certified in *Chu*.  Since the putative class in *Chan* contains substantially all of the putative class members in *Chu* and the *Chan* case was dismissed with prejudice, the claims of the *Chu* putative class are also necessarily encompassed by the Second Award.

matter, participated voluntarily in that process throughout 2019. *Id.* Unable to reach

resolution in mediation, on December 24, 2019, the Arbitrator declared an impasse

and decided, pursuant to the CBA, to proceed to arbitration.[3] A644 ¶ 16. The

Arbitrator scheduled a hearing for January 15, 2020. *Id.* In advance of the hearing,

the Arbitrator requested briefing from the parties concerning the scope of his

jurisdiction. *Id.* The Arbitrator, plainly aware of the various court proceedings and

that some individual employees are represented by non-Union counsel, also sought

briefing on the role of such counsel in the proceeding. *Id.* The Arbitrator specifically

included CPC Intervenors' counsel on the communication and invited them to attend

---

[3] In response to the Arbitrator's decision to pursue the claims to arbitration, counsel for the CPC Intervenors sought to enjoin the arbitral hearing. The *Chu* court denied the requested relief. A702. Insofar as Appellants allege that the Appellees "arbitrated the claims . . . in direct violation of numerous court orders and injunctions[]", these allegations do not apply to CPC because no injunction was ever issued. Appellants' Br. 5. The UJC Intervenors involved in the First Award did not seek to intervene in the instant proceedings involved in the Second Award. The *Hichez* Court did enjoin the UJC Intervenors from proceeding in arbitration and they were excluded from the First and Second Award. Hence, neither CPC nor UJC violated any court order or injunction. Since the denial of the UJC Intervenors' initial intervention, the overtime, spread of hours and minimum wage claims in that case have been dismissed, *Hichez v. United Jewish Council of the E. Side*, Index No. 653250/2017 (N.Y. Sup. Ct., N.Y. Cnty., Dec. 13, 2021). Further, the UJC Intervenors were enjoined from representing any *Hichez* putative class members due to an injunction issued under the All Writs Act by Judge Koeltl. *1199SEIU United HealthCare Workers E. v. PSC Cmty. Servs.*, No. 20-cv-3611, 2022 U.S. Dist. LEXIS 185917, at *5 (S.D.N.Y. Oct. 11, 2022). Hence, the UJC Intervenors cannot represent any putative class members and therefore lack standing to intervene any further.

the hearing and submit briefs. *Id.* CPC Intervenors declined the Arbitrator's invitation to participate in the proceeding. *Id.*

On April 17, 2020, the Arbitrator issued an award finding that the Grievance was arbitrable and that he had jurisdiction over it ("First Award"). The Union subsequently petitioned the court below to confirm the First Award. A645 ¶¶ 17–18; Pet. Confirm Arb. Award, ECF No. 1. CPC Intervenors moved to intervene—making fundamentally the same arguments they make now—and the district court denied such motion on the basis, *inter alia*, that CPC Intervenors lacked standing to oppose confirmation of the First Award. A645 ¶ 19. The court applied the "well established" principle that "an individual employee represented by a union [in a labor arbitration] generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties" unless the employee shows that "the union breached its statutory duty of fair representation." *1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs.,* 520 F. Supp. 3d 588, 599 (S.D.N.Y. 2021) (quoting *Katir*, 15 F.3d at 24-25; *U.S. Postal Serv. v. Am. Postal Workers Union*, 564 F. Supp. 545, 550 (S.D.N.Y. 1983)). Because CPC Intervenors did not show that the Union breached that duty, the district court correctly held that "the Proposed Intervenors lack standing to challenge the Award." *1199SEIU United Healthcare Workers E.*, 520 F. Supp. 3d at 598.

The Court also concluded in the alternative that CPC Intervenors "failed to demonstrate that they satisfy the requirements of Rule 24" for intervention as of right or permissive intervention. *Id.* With respect to intervention as of right, the district court held that they failed three of the requirements for intervention as of right under Rule 24(a). *First*, their alleged "interest" in the confirmation proceeding—namely, their "apparent argument that confirmation of the [First] Award may impair their ability to assert their claims in state court"—was "too contingent or remote to be cognizable under Rule 24." *Id*. at 600. *Second*, any "alleged impairment" of that interest resulting from confirmation of the First Award was too "speculative" to support intervention as of right. *Id*. *Third*, CPC Intervenors have "failed to show that their interest in the resolution of their claims against [their employers] is not being adequately represented" by the Union. *Id*..

CPC Intervenors did not move to reargue or reconsider. A645 ¶ 20. On March 22, 2021, CPC Intervenors filed an appeal, on a non-expedited basis. A645 ¶ 21. CPC Intervenors perfected the appeal on April 15, 2021. *Id*. The appeal was fully briefed as of February 15, 2022 and has been pending since. *Id*.

Meanwhile, the Arbitration continued. On February 25, 2022, the Arbitrator issued a second award ("Second Award"). A645-646 ¶ 22. Therein, the Arbitrator found that CPC and all other Respondents had violated certain Covered Statutes and ordered, as a remedy, that the Respondents fund a pool of approximately $35 million

14

to distribute to affected home care attendants. *Id.* To effect this remedy, the Arbitrator ordered CPC, among other agencies, to provide, no later than March 28, 2022, detailed personnel information for home care attendants from 2008 through 2021. A646 ¶ 23. At substantial effort and expense, CPC complied. *Id.* The Arbitrator also ordered CPC to fund its substantial portion of the $35 million fund no later than April 26, 2022. *Id.* CPC has complied with that obligation as well. *Id.*

On March 1, 2022, the Union filed a petition with the district court to confirm the Second Award. A48-66. On April 26, 2022, after seeking but being denied an injunction against enforcement of the Second Award, the CPC Intervenors and others filed a second motion to intervene before Judge Koeltl and to vacate the arbitration award. A575-581. CPC filed an opposition to the CPC Intervenors' motion to intervene on May 3, 2022. A641-642. By written opinion and order dated June 24, 2022, Judge Koeltl denied the Proposed Intervenors motions to intervene and vacate. A740. This appeal followed.

## COUNTERSTATEMENT OF THE STANDARD OF REVIEW

This Court reviews a District Court order denying intervention, either as of right or by permission, for abuse of discretion. *Catanzano ex. rel Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996). That standard of review is highly deferential. *DSI Assocs. LLC v. United States*, 496 F.3d 175, 182-183 (2d Cir. 2007). It "reflects the view that district courts, due to their proximity to the dispute, usually have a better

15

sense of the case's factual nuances upon which a motion to intervene often turns." *Butler, Fitzgerald & Porter*, 250 F.3d at 176; *see United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994).

Additionally, "'[a] federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential—indeed, among the most deferential in the law.'" *A&A Maint. Enter., Inc. v. Ramnarain*, 982 F.3d 864, 868 (2d Cir. 2020) (citation omitted). The Court reviews a "'district court's decision to confirm an arbitration award *de novo* to the extent it turns on legal questions and…review[s] any findings of fact for clear error.'" *Id.* (citation omitted). However, where here, "the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019).

## SUMMARY OF THE ARGUMENT

The District Court did not abuse its discretion in holding that CPC Intervenors lacked standing and, in any event, failed to satisfy the requirements for intervention under Federal Rule of Civil Procedure 24(a). This Court should affirm the District Court's denial of CPC Intervenors' Motion to Intervene. In doing so, this Court would render the other issues on appeal moot as to CPC. If the CPC Intervenors are correctly deemed non-parties to the instant matter, their arguments in favor of blocking and/or partially vacating the Second Award—which was awarded as part

of an arbitration between the Union and CPC, and other home care agency employers, *not* CPC Intervenors—should not be considered by this Court.

I.       The District Court correctly concluded that CPC Intervenors lacked standing to oppose confirmation of the Second Award.

A.       Under this Court's precedents applying the LMRA, CPC Intervenors lack standing to oppose confirmation of the Second Award. This Court has held that "an individual employee represented by a union" in a labor arbitration "generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties" unless the employee can show that the union breached its duty of fair representation. *Katir*, 15 F.3d at 24-25. Because the Union and the home care agency employers only were parties to the arbitration, and because CPC Intervenors have not shown (or alleged) that the Union breached its duty of fair representation, the District Court correctly concluded that CPC Intervenors lack standing to intervene and oppose confirmation.

B.       CPC Intervenors also lack standing for a second, independent reason: They failed to satisfy the minimum requirements for Article III standing.

CPC Intervenors fail to satisfy the injury-in-fact requirement because the harm they allege is not "imminent" or "certainly impending." *Clapper*, 568 U.S. at 409. CPC Intervenors claim that judicial confirmation of the Second Award may "*potentially*" impact other cases they have brought that are currently pending in other

courts. *See* CPC Intervenors Br. 40 (emphasis added). But that "[a]llegation[] of *possible* future injury" is not sufficient to satisfy the injury-in-fact requirement. *Clapper*, 568 U.S. at 409 (emphasis and internal quotation marks omitted). Their theory of injury is also too speculative to establish standing because it "require[s] guesswork as to" whether "independent decisionmakers"—here, other courts— would conclude that the District Court's confirmation decision has preclusive effect. *Id.* at 413.

II.  Because CPC Intervenors lack standing, this Court need not address whether they satisfy the requirements for intervention under Rule 24. To the extent this Court reaches that question, the District Court did not abuse its discretion in concluding that CPC Intervenors failed to satisfy intervention as of right or by permission under Rule 24. Failure to meet any one of Rule 24(a)(2)'s requirements would suffice to deny intervention. Here, CPC Intervenors failed to meet three separate requirements.

*First*, the District Court did not abuse its discretion in concluding that CPC Intervenors cannot establish an "interest" sufficient to support intervention. CPC Intervenors' claimed interest in preserving the strength of their claims that are pending before other courts is not cognizable because it is "contingent upon the occurrence of a sequence of events." *Brennan*, 260 F.3d at 129 (internal quotation marks omitted). That claimed interest requires the Court to speculate regarding the

18

future actions of independent third parties—namely, the other courts addressing their claims.

*Second*, the District Court did not abuse its discretion in concluding that CPC Intervenors failed to show that their interests "may be impaired by the disposition" of the confirmation proceeding. *D'Amato*, 236 F. 3d at 84.As the District Court held, the alleged impairment of CPC Intervenors' purported interest in being entitled to a richer award and likelihood of asserting class certification is too "speculative" to support intervention as of right. *1199SEIU United Healthcare Workers E.*, 520 F. Supp. 3d at 600.

*Third*, the District Court did not abuse its discretion in concluding that CPC Intervenors failed to meet their burden to show that their interests were "not being adequately represented" by the Union. *Id.* The District Court correctly explained that "[t]he Union has acted with diligence, and the Proposed Intervenors have provided no evidence to suggest that the Union would not adequately represent the Proposed Intervenors' claims against the Respondents." *Id.*

III.   CPC Intervenors argue in the alternative that they have standing under Federal Rule of Civil Procedure 71, but Rule 71 does not confer an independent basis for standing.

IV.   CPC Intervenors' arguments in favor of reversing the District Court's confirmation of the Second Award and denial of the partial vacatur of same are

without merit.  CPC Intervenors do not represent a certified class and thus have no standing to dispute the Second Award on behalf of others. In addition, the District Court correctly deferred to the Arbitrator's decision in the Second Award which resolves the Union's claims and thus the claims of the employees and former employees it represents. Arbitration provisions without temporal limitations have been applied to grievances prior to the institution of such provisions in circumstances similar to the instant proceeding which should be controlling here.

## ARGUMENT

### I.    The Court Should Affirm the District Court's Denial of CPC Intervenors' Motion to Intervene.

#### A.    CPC Intervenors Lack Standing to Intervene.

CPC Intervenors lack standing for reasons set forth in CPC's opposition to CPC Intervenors' prior motion to intervene, *see* Resp't-Appellees Mem. Opp'n Mot. Intervene, *1199SEIU United Healthcare Workers E.*, 520 F. Supp. 3d 588, ECF No. 109, and in its previous brief to this Court in this case, Resp'ts-Appellees Br., *1199SEIU United HealthCare Workers E. v. PSC Cmty. Servs.*, No. 21-633 (2d Cir. Jan. 18, 2022), ECF No. 84, which CPC incorporates herein by reference.  For ease of reference, those reasons are as follows.[4]

---

[4] In addition, where, as here, a court denies a party's motion to intervene, any "renewed attempt to intervene is foreclosed by the doctrine of the law of the case." *Ransmeier*, 486 F. App'x at 892 (denying party's motion to intervene, explaining that "in deciding [petitioner's] second motion to intervene, Judge . . . was not just *permitted*, he was *required* to follow our prior ruling") (emphasis in original).

*First*, CPC Intervenors were not parties to the arbitration. Accordingly, this Court's established precedent makes clear that CPC Intervenors "do[] not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties." *1199SEIU United Healthcare Workers E.*, 520 F. Supp. 3d at 598 (quoting *Katir*, 15 F.3d at 24-25).[5] Indeed, courts in this circuit have long recognized that an employee has standing to challenge the result of an arbitration

_____

Courts in this district have further held that new arguments based on existing evidence at the time of the first motion, do not render the law of the case doctrine inapplicable. *See In re Manhattan Inv. Fund Ltd.*, 343 B.R. at 67 (refusing to entertain a motion that would be a re-litigation of an issue already decided). In fact, such situation would be "a particularly suitable occasion for application of the doctrine, as it comports with the basic principle that parties must raise their arguments at the first opportunity or waive them." *Id.* Here, the Court already denied a substantially identical motion to intervene in a well-reasoned opinion in which the District Court held that CPC Intervenors (i) lack standing to challenge the Arbitrator's awards and (ii) do not satisfy the requirements of Rule 24 for intervention. CPC Intervenors have not pointed to a change in controlling law, new evidence, nor clear error that would create a "cogent or compelling" reason for this Court to depart from the Denial Order. CPC Intervenors do not assert otherwise— they do not even attempt to contend with or distinguish the Court's prior decision.

[5] The CPC Intervenors do not confront this general rule, but instead rely on *Association of Contracting Plumbers* for the proposition that non-parties are permitted to intervene. *See Ass'n of Contracting Plumbers of N.Y., Inc. v. Local Union No. 2 United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada*, 841 F.2d 461, 466 (2d Cir. 1988). Such reliance is misplaced. *Association of Contracting Plumbers* addressed an exception to the general rule that is inapplicable to this case. Indeed, the court in *Association of Contracting Plumbers* expressly acknowledged the general rule that individual employees lack standing absent a showing that the union breached its duty of fair representation and explained that "allowing an individual employee to challenge the arbitration award would undermine the union's ability to pursue grievances on behalf of all its members and would destroy the employer's confidence in the union's authority." *Id.* at 467.

between the union and employer *only* if the employee shows that the "union breached its duty of fair representation." *Katir*, 15 F.3d at 24; *see also Fleischer v. Barnard Coll.*, No. 20-4213, 2021 WL 5365581, at *4 n.1 (2d Cir. Nov. 18, 2021) (summary order) (employee "did not have standing to challenge the arbitration . . . directly," and could "only challenge the arbitration through her claim against the union for breach of its duty of fair representation").

CPC Intervenors have not alleged in this case that the Union breached its duty of fair representation, nor provided any evidence to support such a claim. Rather, CPC Intervenors attempt to maneuver around this issue by asserting that they need not show the Union breached its duty to have standing because "the Union had no such authority in the first place." Appellants Mem. Supp. Mot. Intervene, ECF No. 243 at 5. This is false. The Union thus owes a duty of fair representation to the CPC Intervenors. Only if the Union were to breach such duty—which CPC Intervenors admit it has not—would standing be conferred to the CPC Intervenors in this matter. *See Katir*, 15 F.3d at 24.

*Second*, CPC Intervenors lack standing for a second, independent reason: They fail to show that they will suffer a non-speculative injury-in-fact sufficient to confer standing under Article III of the Constitution, thereby precluding intervention. *Town of Chester*, 581 U.S. at 439-441. To establish Article III standing, a litigant must show that he or she has "(1) suffered an injury in fact, (2)

22

that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Where a party's theory of standing rests on an alleged future injury, the injury-in-fact "must be *certainly impending*," and "allegations of *possible* future injury" are not sufficient. *Clapper*, 568 U.S. at 409 (alteration omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Here, the lone injury CPC Intervenors allege is that "the Second Award purports to resolve most of the CPC Intervenors' statutory wage claims in arbitration" and that such resolution may "*potentially* impact[] the rights of the CPC Intervenor-class representatives from moving to certify classes" in their other pending litigation. Appellants Br. 40 (emphasis added). Injury-in-fact cannot be based on the *potential* of better recovery in a different forum or the *potential* impact the Second Award may have in CPC Intervenors' other litigations. *Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC*, 289 F. Supp. 3d 582, 590 (S.D.N.Y. 2018) (concerns about potential impact on another litigation "is insufficient to demonstrate an injury in fact because it is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case.") (internal quotation marks omitted). As such, CPC Intervenors' theory of injury is too speculative to satisfy the injury-in-fact requirement because it depends on the actions of an independent third party—in this case, a state or federal court considering CPC

Intervenors' claims in pending or future litigation. *Clapper*, 568 U.S. at 413 (U.S. Supreme Court is "reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment."). Accordingly, CPC Intervenors' speculative "injury" is insufficient to establish standing.

Third, CPC Intervenors also argue that they have standing on behalf of the putative class members in the *Chu* matter. Appellants Br. 51. They are wrong. The district court held, "[t]o the degree that the Proposed Intervenors argue they are intervening on behalf of a class, they lack standing, because they have not pointed to any class that has been certified." *1199SEIU United Healthcare Workers E.*, 520 F. Supp. 3d at 598 n.7. The District Court was correct: A purported class representative may not obtain relief on behalf of a putative class until a class is actually certified.[6] *See generally Smith v. Bayer Corp.*, 564 U.S. 299, 316 n.11 (2011). And this makes sense because standing should not be predicated on multiple layers of speculation. It depends not only on the assertion that a court might give preclusive effect to a confirmed Second Award at some point in the future, but also on the highly speculative assertion that a court will even certify CPC Intervenors' class. That "highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending." *Clapper*, 568 U.S. at 410.

---

[6] Furthermore, the putative class in *Chu* is substantially similar to the *Chan* putative class which has been dismissed with prejudice.

The bottom line: CPC Intervenors lack standing to intervene. *See Town of Chester*, 581 U.S. at 439-441.

### B. Proposed Intervenors are Not Entitled to Intervene as of Right.

Even if this Court concludes that CPC Intervenors have standing, they cannot satisfy the requirements for intervention as of right under Federal Rule of Civil Procedure 24(a)(2). Again, CPC incorporates herein its arguments in the opposition to CPC Intervenors' appeal of the Denial Order, *see* Resp'ts-Appellees Br., No. 21-633, ECF No. 84,which is summarized below.

To intervene as of right, CPC Intervenors must: (i) file a timely motion; (ii) show "an interest in the litigation"; (iii) show that their interests "may be impaired by the disposition of the action"; and (iv) show that their interests are "not adequately protected by the parties to the action." *D'Amato*, 236 F.3d at 84 (citation omitted). "Failure to meet any one of these requirements suffices for a denial of the motion." *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197–98 (2d Cir. 2000); *see D'Amato*, 236 F.3d at 84. Here, CPC Intervenors cannot meet the final three requirements.

*First*, the CPC Intervenors cannot establish "an interest" in the petition for confirmation sufficient to support intervention as of right. *D'Amato*, 236 F.3d at 84 "[F]or an interest to be 'cognizable' under Rule 24, it must be 'direct, substantial, and legally protectable.'" *Floyd v. City of New York*, 770 F.3d 1051, 1060 (2d Cir.

25

2014) (per curiam) (quoting *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010)).  "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Brennan*, 260 F.3d at 129 (citation omitted).

CPC Intervenors assert that "their interests may be impaired because the Second Award purports to finally resolve their statutory wage clams for a sum certain that is  less than full satisfaction of their claims, or for nothing if they do not timely file a claim form to participate in the arbitration wage fund" and the Second Award "may" impair their efforts to move for class certification  Chu Intervenor Br. 7-8.  This is not enough for intervention.  Interests that are "contingent upon the occurrence of a sequence of events"—including the uncertain actions of another court that considers the Second Award in its own proceedings—are not sufficient. *Brennan*, 260 F.3d at 129.  Other courts in this Circuit have rejected identical purported interests as too remote and contingent. *See Eddystone*, 289 F. Supp. 3d at 592-595 ("The Proposed Intervenors' apparent interest, as best this Court can discern, is the right to challenge the Arbitration Award because confirmation of such award will adversely affect their ability to mount a defense in [another action] . . . . But that winding articulation of the Proposed Intervenors' interest merely underscores its contingent and remote nature."); *see also Sec. Invs. Prot. Corp. v.*

*Bernard L. Madoff Inv. Sec. LLC*, 550 B.R. 241, 250 (S.D.N.Y. 2016) (holding that the mere possibility that an adverse judgment might arguably impair intervenor's ability to defend other actions brought against them does not satisfy the "interest" requirement for intervention).

*Second*, even if CPC Intervenors had an interest sufficient to support intervention, they have not shown that their interests "may be impaired by the disposition" of the confirmation petition. *D'Amato*, 236 F.3d at 84. This Court has held that "potential obstacles to the pursuit of an independent lawsuit do not 'impair or impede the applicant's ability to protect [its] interest,' Fed. R. Civ. P. 24(a)(2), to an extent warranting intervention as of right." *In re Holocaust Victim Assets Litig.*, 225 F.3d at 199. That is particularly so when those "potential obstacles" are as speculative as they are here. Any "hypothetical effect of an adverse judgment on any rights that the CPC Intervenors may have" in pursuing other claims is therefore "not the type of practical impairment contemplated by Rule 24(a)(2)." *Eddystone*, 289 F. Supp. 3d at 594 (alteration omitted) (quoting *Union Switch & Signal, Inc. v. St. Paul Fire & Marine Ins. Co.*, 226 F.R.D. 485, 488 (S.D.N.Y. 2005)).

*Third*, the CPC Intervenors failed to show that their interest in the resolution of their claims is not being adequately represented by the Union. This Court has "demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." *Butler, Fitzgerald*

27

& *Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001). In those circumstances, there is a "presumption of adequate representation by the party already in the action," and the burden is on the putative intervenor to "rebut" that presumption. *Id.* at 179-181; *see Wash. Elec. Coop. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990) ("Where there is an identity of interest between a putative intervenor and a party, adequate representation is assured."). Disagreement on a tactical or legal matter that does not prevent the existing party from advocating vigorously for the shared ultimate outcome is not sufficient to rebut evidence of an identity of interest, and a district judge's determination with respect to adequacy of representation is afforded deference. *See Nat. Res. Def. Council, Inc. v. N.Y. State Dep't of Env't Conservation*, 834 F.2d 60, 62 (2d Cir. 1987).

In this case, the Union more than adequately represents the interests of CPC Intervenors. In general, unions are presumed to share an "ultimate objective" and "identity of interest" with their members where a collective bargaining agreement grants a union authority to resolve disputes on behalf of its members. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653 (1965) (holding that a former employee "must afford the union the opportunity to act on his behalf").

CPC Intervenors rely on *In Re Payment Card Interchange Fee & Merch Discount Antitrust Litigation* to support their contention that the Union did not adequately represent them because the Union filed the arbitration for the sole

28

purpose of "limited recovery of unpaid wages," whereas the Proposed Intervenors seek to maximize their recovery. CPC Opposition Br. 22. That case does not help CPC Intervenors. It addressed the interests of a class representative in the context of class certification, not the interests of a union, which is presumed to share an identity of interests with its members. *See In Re Payment Card Interchange Fee & Merch Discount Antitrust Lit.*, 827 F.3d 223 (2d Cir. 2017).

CPC Intervenors further assert that the Union failed to adequately represent them because it failed to prosecute certain statutory wage violations. Appellants Br. 11. As the District Court previously concluded, however, the "Union has acted with diligence" in pursuing Proposed Intervenors' claims on their behalf, and shares Proposed Intervenors' ultimate objective of prevailing on their wage-hour claims. *1199SEIU United Healthcare Workers E.*, 520 F. Supp. 3d at 600. Differing views on the best way to pursue claims do not render representation inadequate. *See United States v. City of New York*, 198 F.3d 360, 367 (2d Cir. 1999) ("Representation is not inadequate simply because . . . the applicant and the existing party have different views on the facts, the applicable law, or the likelihood of success of a particular litigation strategy."); *cf. Nat. Res. Def. Council*, 834 F.2d at 61-62 ("A putative intervenor does not have an interest not adequately represented by a party to a lawsuit simply because it has a motive to litigate that is different from the motive of an existing party.").

In sum, CPC Intervenors are not entitled to intervene as of right under Rule 24(a).

### C.    Permissive Intervention is Not Warranted.

CPC Intervenors argue in the alternative that the Court should overturn the district court's decision to deny leave to intervene under Federal Rule of Civil Procedure 24(b), which allows permissive intervention to anyone who, on a timely motion, "has a claim or defense that shares with the main action a common law or fact."  Whether to permit intervention is wholly within the discretion of the trial court, and the "principal consideration . . . is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  *Eddystone*, 289 F. Supp. 3d at 595 (quotations and citations omitted).   However, "the considerations that render [a proposed intervenor] ineligible for intervention as of right . . . militate strongly as well against granting permissive intervention under Rule 24(b)."  *Id.*(quoting *State Comm. of Indep. v. Berman*, No. 03-cv-4123, 2003 WL 22801908, at *1 (S.D.N.Y. Nov. 21, 2003)).  Accordingly, the CPC Intervenors' "inchoate fear that any judgment confirming the Arbitration Award may be enforced against them" in other proceedings "does not warrant permissive intervention."  *Id*. The Arbitrator in the case invited CPC Intervenors' counsel to participate in the case and they did so at the mediation stage. They could have been part of the proceedings

but elected not to do so. They should not be permitted to claim now that they want to be part of this proceeding to oppose confirmation of the Second Award.

### D. Federal Rule of Civil Procedure 71 Does Not Cover Standing.

First and foremost, Rule 71 does not confer an independent basis for standing. It is well-settled that "Rule 71 does nothing to disturb the requirement of standing to sue." *United States v. Dist. Council of N.Y.C. & Vicinity of United Bhd. of Carpenters & Joiners of Am.*, No. 90 CIV. 5722 (CSH), 2002 WL 31873460, at *8 (S.D.N.Y. Dec. 24, 2002) (citing 13 *Moore's Federal Practice* (3d ed.1997) at 71–5). That is, Rule 71 "cannot be used by a party to enforce an order in an action in which he [does not have] standing to sue." *Santore v. Cuomo*, No. 1:20-cv-850 (MAD/CFH), 2020 WL 9810016, at *2 (N.D.N.Y. Aug. 14, 2020) (internal quotation marks omitted). In fact, the cases CPC Intervenors cite dealing with consent decrees in their brief explicitly state that a nonparty must independently have standing in a matter for Rule 71 to apply. *See Lasky v. Quinlan*, 558 F.2d 1133, 1137 (2d Cir. 1977) (holding Rule 71 "cannot be used by a party to enforce an order in an action in which he no longer has standing to sue"); *see also Calderon v. Wambua*, No. 74 CIV. 4868 LAP, 2012 WL 1075840, at *7 (S.D.N.Y. Mar. 28, 2012) (party has standing *independent* of its Rule 71 enforcement action). In other words, Rule 71 is not an independent basis for standing—and as set forth *supra*, CPC Intervenors do not have standing.

31

Even if Rule 71 applied and conveyed standing, CPC Intervenors do not have an order to enforce in this case. On the contrary, they rely on—and completely mischaracterize—an order issued in 2016 by the Honorable Katherine B. Forrest whereby she remanded the *Chu* litigation to state court. *Chu v. Chinese-Am. Planning Council Home Attendant Program, Inc.*, 194 F. Supp. 3d 221, 228 (S.D.N.Y. 2016). The only relief issued by that order was remand. Though Judge Forrest had before her a motion by CPC to compel arbitration, Judge Forrest expressly declined to rule on that motion, finding that "the Court lacks authority to consider" it. *Id.* at 230. Nonetheless, in dicta that was entirely irrelevant to the issue of remand, Judge Forrest wrote that the *Chu* plaintiffs were not bound by the 2015 MOA because they left CPC before the 2015 MOA effective date. This Court should reject the CPC Intervenors' attempt to mischaracterize Judge Forrest's remand decision as an "order" that can be enforced in this proceeding through Rule 71. *See Wong v. Doar*, 571 F.3d 247, 257 (2d. Cir. 2009); *see also Ryan v. Allen*, 992 F. Supp. 152, 156 (N.D.N.Y. 1998).

**II**. **The Court Should Grant the Petition to Confirm the Second Award and Deny the Motion to Partially Vacate.**

If, *arguendo*, this Court considers arguments raised by non-parties to the arbitration—including the CPC Intervenors—regarding the vacatur of the Second

Award, then it must affirm the District Court's confirmation of the award and find partial vacatur to be wholly inappropriate.

## A. The District Court Previously Upheld the Arbitrator's Rulings on Arbitrability.

As the District Court previously acknowledged, "[c]ourts in this Circuit have recognized that when 'parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability,' such as the AAA Rules, 'the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.'" *1199SEIU United Healthcare Workers E.*, 520 F. Supp. 3d at 607 (citation omitted). *See Commc'ns Workers of Am., AFL-CIO v. AT&T Inc.*, 6 F.4th 1344, 1348 (D.C. Cir. 2021) (where the contractual language incorporates the AAA arbitral rules, the parties have clearly and unmistakably consented to allow the arbitrator to decide authority). Because the parties here explicitly incorporated the AAA Rules into the CBA, the Arbitrator was empowered to decide issues of arbitrability and, thus, the District Court held that the CBA delegated questions of arbitrability to the Arbitrator by reference to the AAA Rules. *Id.*; *see Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208 (2d Cir. 2005). The Arbitrator's ruling with respect to the merits of the arbitrability of the Union's grievance is a question of contract interpretation to which the applicable deferential standard of review applies. *See Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*,

33

820 F.3d 527, 532 (2d Cir. 2016). The District Court is meant to "simply ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" *Id.* (citation omitted).

To the extent that the CPC Intervenors now argue that this Court should apply a *de novo* standard of review to threshold questions of arbitrability that argument is without merit. Appellants Br. 36. CPC Intervenors rely on *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942-944 (1995) in support of their argument, but that case requires application of a *de novo* standard only in situations where it is not clear and unmistakable that the parties have delegated the question of arbitrability to the arbitrator. *Id.*; *Nicosia v. Amazon.com*, 834 F.3d 220, 229 (2d Cir. 2016) ("The question of whether the parties have agreed to arbitrate, i.e., the 'question of arbitrability,' is an issue for judicial determination *unless the parties clearly and unmistakably provide otherwise*.") (emphasis added). Where there is clear and unmistakable evidence that the parties delegated the question of arbitrability to the arbitrator, the Court must apply the deferential standard requiring that the Court "will set that decision aside only in very unusual circumstances" (i.e. corruption, fraud, or undue means; arbitrator exceeded his powers). *First Options of Chicago*, 514 U.S. at 942-944. Here, as the District Court previously found, the CBA clearly and unmistakably provides that "arbitrations occur pursuant to AAA Rules,

34

including AAA Rule 3(a), which delegates questions of jurisdiction and 'arbitrability' to the Arbitrator." *1199SEIU United Healthcare Workers E.*, 520 F. Supp. 3d at 606. "Courts in this Circuit have recognized that when 'parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability,' such as the AAA Rules, 'the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.'" *Id.* at 607 (quoting *Contec Corp.*, 398 F.3d at 208). Accordingly, given the clear and unmistakable evidence demonstrated through the parties' incorporation of the AAA Rules in the CBA, the District Court applied the appropriately narrow and highly deferential level of review of an LMRA arbitration award. *See A&A Maint. Enter., Inc.*, 982 F.3d at 868.

With respect to whether the Union's grievance was arbitrable, the district court t held that it "[could not] say that the Arbitrator's finding that claims based on violations of the Covered Statutes that occurred prior to the 2015 MOA's effective date were arbitrable either failed to draw its essence from the CBA or was outside the scope of his authority." *1199SEIU United Healthcare Workers E.*, 520 F. Supp. 3d at 607. To the extent CPC Intervenors now argue that this Court should apply a *de novo* standard to its review of the Arbitrator's determination on arbitrability, is entirely without merit. *Id.* To reverse the Arbitrator's decision and hold that the claims of the Pre-2015 MOA Employees are not arbitrable "would 'essentially allow

Union members to opt-out of their obligations under a collective bargaining agreement by simply withdrawing from their union prior to bringing suit.'" *Id.* (quoting *Germosen v. ABM Indus. Corp.*, No. 13-cv-1978, 2014 WL 4211347, at *6 & n.16 (S.D.N.Y. Aug. 26, 2014). In fact, courts in this Circuit have compelled former employees to arbitrate claims pursuant to a CBA, including in instances where additional grievance procedures were entered into after the former employees ceased employment. *See Chan et al v. Chinese-American Planning Council Home Attendant Program, Inc.,* 180 F. Supp. 3d 236 (S.D.N.Y. 2016); *see also Rodriguez v. New York Foundation for Senior Citizens Home Attendants Servs. Inc.*, No. 15-cv-9817(VEC), 2016 WL 11707094, at *3 (S.D.N.Y. July 14, 2016) (finding an employee who ceased working prior to a 2015 MOA taking effect was still compelled to arbitrate her wage-hour claims, including statutory claims, because the language of the 2015 MOA did not place a temporal limitation on arbitrability); *Pontier v. U.H.O Mgmt. Corp.*, No. 10-cv-8828, 2011 WL 1346801, at *3 (S.D.N.Y. Apr. 1, 2011) (the fact that plaintiff was discharged before the union executed a supplemental agreement requiring arbitration of Title VII claims "[d]id not relieve Plaintiff of his obligation to abide by the mediation and arbitration provisions" contained therein) (internal quotation marks omitted); *Duraku v. Tishman Speyer Properties, Inc.*, 714 F. Supp. 2d 470, 474 (S.D.N.Y 2010) (compelling arbitration of an employees' Title VII and state law discrimination claims, based on

supplemental agreement's alternative dispute resolution provision negotiated after the claims were filed).

What's more, the CPC Intervenors heavy reliance on this Court's summary affirmance in *Agarunova* is misplaced. *Agarunova v. Stella Orton Home Care Agency, Inc.*, 794 F. App'x 138 (2d Cir. 2020). In *Agarunova*, the Second Circuit affirmed the District Court's ruling that a former employee could not be compelled to arbitrate pursuant to the 2015 MOA; however, the Court of Appeals did not address the home care agency employer's argument that the threshold question of arbitrability was properly delegated to the Arbitrator under the CBA. *See id.* at 140. "Because the question of whether the Arbitrator's jurisdiction extended to former employees' statutory claims is a question of arbitrability, and the CBA delegated such questions to the Arbitrator, *Agarunova* does not support the [Appellants'] argument." *1199SEIU United Healthcare Workers E.*, 520 F. Supp. 3d at 608..[7]

---

[7] In addition, CPC Intervenors repeatedly cite to *Hichez v. United Jewish Council of the E. Side*, 179 A.D.3d 576 (N.Y. 1st Dep't 2020) in error. Many of the underlying claims (e.g.: spread of hours, minimum wage and overtime claims) in the *Hichez* case were dismissed. *Hichez v. United Jewish Council of the E. Side*, Index No. 653250/2017 (N.Y. Sup. Ct., N.Y. Cnty., Dec. 13, 2021), Furthermore, the *Hichez* named plaintiffs have not challenged the confirmation of the Second Award. The *Hichez* rulings that CPC Intervenors rely on are outdated and no longer have bearing on the validity of the Second Award since the *Hichez* named plaintiffs can not represent a putative class and have had most of their underlying claims dismissed in any event. *1199SEIU United HealthCare Workers E.*, 2022 U.S. Dist. LEXIS 185917, at *5.

**B.    The Second Award Construes and Applies the CBA, Sets Forth a Clear Justification and Rationale for the Arbitrator's Conclusions and Remedy, and Therefore, Must be Confirmed.**

This Court must not disrupt the District Court's confirmation of the Second Award because the Arbitrator offers a clear, thorough and well-reasoned justification for the outcome reached, based on an analysis of the express terms of the CBAs, the facts stipulated to by the parties, and the goals of settling disputes efficiently and avoiding long and expensive litigation that led the parties to agree to Arbitration under the CBA. *See Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 532 (2d Cir. 2016).

After construing and considering the CBA, the Arbitrator came to two primary conclusions: (1) that all of the home care agency employers had violated the CBA by failing to pay employees wages required under the relevant wage and hour statutes and (2) that the remedy awarded was the best way to provide employees with significant relief on their wage and hour claims while avoiding long and expensive litigation that could undermine employees' ability to obtain compensation and risk significant disruptions for current employees and patients. *See* A113, A115-A116. These conclusions were based on applying the evidence that the Arbitrator gathered throughout the course of the arbitration to the express terms of the CBA. This Court's review of such an award under the LMRA is "narrowly circumscribed

and highly deferential." *ABM Indus. Grps., L.L.C. v. Int'l Union of Operating Eng'rs, Loc. 30*, 968 F.3d 158, 161 (2d Cir. 2020) (citation omitted). Courts employ such a high level of deference to avoid "usurp[ing] a function which is entrusted to the arbitration tribunal." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509-10 (2001).

A recent ruling from a district court in this Circuit illustrates this high level of deference. The court confirmed an award even when the arbitrator mistakenly considered a different CBA when rendering the award because there was evidence that the operative CBA was similar in substance enough to the CBA that the arbitrator considered and thus, the arbitrator had "arguably construed and applied the CBA." *Loc. 794, Television Broad. Studio Emps. Union, I.A.T.S.E. v. Metro. Opera Ass'n, Inc.*, No. 21-cv-3821 (VEC), 2022 WL 992830, at *9 (S.D.N.Y. Mar. 31, 2022) ("'Given the deferential standard of review, the Court is concerned only with whether the Arbitrator 'even arguably constru[ed] or appl[ied] the contract.' Because the provisions of the CBA applied by the Arbitrator are similar in substance to the provisions of the operative CBA and because any differences were not material to the Arbitrator's findings, the Arbitrator has arguably construed and applied the CBA.") (quoting *Garvey*, 532 U.S. at 509).

### C.     Movants Lack Standing to Move to Vacate the Second Award.

Although the merits of denying vacatur of the Second Award are discussed above, CPC Intervenors nevertheless lack standing to move to vacate the Second Award to the extent they argue on behalf of a putative class as no class has been certified in the *Hichez* or *Chu* actions. *Hichez v. United Jewish Council of the E. Side*, No. 653250/2017, 2020 WL 2747784, at *3 (N.Y. Sup. Ct. N.Y. Cnty. May 27, 2020) (Freed, J.) (acknowledging that the court's injunctive relief is only binding on named plaintiffs). In any event, "'a court must analyze the injuries allegedly suffered by the named plaintiff, not unnamed members of the potential class, to determine whether plaintiff has Article III standing.'" *1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs.*, 597 F. Supp. 3d 557, 569 n.8 (S.D.N.Y. 2022) (internal citations omitted).  The CPC Intervenors' reliance on *Irvin v. Harris*, 944 F.3d 63 (2d Cir. 2019), is misplaced.  In *Irvin*, a class of incarcerated individuals had been certified and the question was whether the named plaintiffs could continue adequately representing the class when none of them remained incarcerated. *Id.* at 71. Here, no class has ever been certified in *Chu* and the question of the CPC Intervenors' adequacy as class representatives is not before this Court.

Furthermore, CPC Intervenors do not have standing to challenge the Second Award on their own, as discussed more fully *supra* Point I.A at 20-22.  *See Katir*, 15 F.3d at, 24-25 ("An individual employee represented by a union generally does

not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties.").

## CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's denial of the CPC Intervenors' motion to intervene and their other motions to overturn confirmation and seek partial vacatur of the Second Award.

Dated:      New York, New York      Respectfully submitted,
              February 7, 2023

                                        /s/  Kenneth Kirschner
                                      Kenneth Kirschner, Esq.
                                        David Baron, Esq.
                                        HOGAN LOVELLS US LLP
                                        390 Madison Avenue
                                        New York, New York 10017
                                        Tel.: (212) 918-3000
                                        Fax: (212) 918-3100
                                        kenneth.kirschner@hoganlovells.com
                                        david.baron@hoganlovells.com

*Attorneys for CPC*

41

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limits of Fed. R. App.

P. 32(a)(7) because, excluding the parts of the document exempted by Fed. R. App.

P. 32(f), this document contains 10151 words.

2.      This document complies with the typeface requirements of Fed. R. App.

P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this

document has been prepared in a proportionally spaced typeface using Microsoft

Word for Microsoft Office 365 in 14-point Times New Roman.

<u>/s/ Kenneth Kirschner</u>
Kenneth Kirschner

42

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on February 7, 2023. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ Kenneth Kirschner
Kenneth Kirschner
